VARGAS, Judge.
{1} Defendant Sharoski Jackson appeals his convictions for human trafficking, promoting prostitution, accepting earnings from a prostitute, contributing to a delinquency of a minor, and conspiracy. The charges arose from Defendant's interactions with a minor, B.G., in early 2013. At trial, the State presented its theory that B.G. was engaged in commercial sexual activity at the urging and with the assistance of Defendant. The jury found Defendant guilty of all counts.
{2} Defendant appeals, raising four points of error. First, Defendant claims that the district court erred by failing to properly instruct the jury that to convict him of human trafficking, it must find that he knew his victim was under the age of eighteen. Second, Defendant contends that the district court abused its discretion by admitting text messages without requiring the State to first lay a proper foundation for their admission. Third, Defendant argues that there was insufficient evidence to convict him of the charged crimes. Finally, Defendant insists that the district court abused its discretion when it denied his motion for a new trial, based on new evidence that B.G. purportedly lied during her testimony at trial. We discuss each of Defendant's claims of error in turn. Finding no error, we affirm.
DISCUSSION
A. Human Trafficking and Knowledge
{3} Defendant argues that the instructions submitted to the jury were inadequate because the jury should have been instructed that to convict Defendant, it must find Defendant knew B.G. was under the age of eighteen when the acts giving rise to the human trafficking conviction occurred. This is a novel issue that New Mexico courts have not yet considered-whether knowledge of the victim's age is an essential element of human trafficking under NMSA 1978, Section 30-52-1(A)(2) (2008). We begin our analysis by setting forth our standard of review, which requires a plain language reading of the statute. We then consider interpretations of similar statutory language from other jurisdictions to arrive at the conclusion that knowledge of the victim's age is not an element of human trafficking under Section 30-52-1(A)(2).
{4} Statutory interpretation presents "a question of law that we review de novo." State v. Parvilus , 2014-NMSC-028, ¶ 15, 332 P.3d 281. When interpreting statutes, we seek "to give effect to the intent of the Legislature." Id. ¶ 15 ; State ex rel. Helman v. Gallegos , 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352 ("[I]t is part of the essence of judicial responsibility to search for and effectuate the legislative intent-the purpose or object-underlying the statute."). The first indicator of the Legislature's intent is the plain language of the statute. State v.Almanzar , 2014-NMSC-001, ¶ 14, 316 P.3d 183 (acknowledging that courts give "words their ordinary meaning, unless the Legislature indicates a different one was intended"). "When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." State v. Jonathan M. , 1990-NMSC-046, ¶ 4, 109 N.M. 789, 791 P.2d 64, superseded by statute as stated in State v. DeAngelo , 2015-NMSC-033, 360 P.3d 1151.
{5} Our human trafficking statute provides:
A. Human trafficking consists of a person knowingly:
(1) recruiting, soliciting, enticing, transporting or obtaining by any means another person with the intent or knowledge that force, fraud or coercion will *678 be used to subject the person to labor, services or commercial sexual activity;
(2) recruiting, soliciting, enticing, transporting or obtaining by any means a person under the age of eighteen years with the intent or knowledge that the person will be caused to engage in commercial sexual activity; or
(3) benefiting, financially or by receiving anything of value, from the labor, services or commercial sexual activity of another person with the knowledge that force, fraud or coercion was used to obtain the labor, services or commercial sexual activity.
Section 30-52-1(A).
{6} Initially, we note that the Legislature offset "knowingly" from the remainder of the definition of human trafficking, making it applicable to all three subparts of Section 30-52-1(A). Defendant argues that, with regard to Section 30-52-1(A)(2), the "knowingly" requirement refers to the entire phrase, "recruiting, soliciting, enticing, transporting, or obtaining by any means a person under the age of eighteen years." Applying the plain language rule and utilizing rules of grammar, we conclude that the more persuasive interpretation of the statute is that the Legislature intended that the "knowingly" requirement modify "recruiting, soliciting, enticing, transporting or obtaining" as they are used in Section 30-52-1(A)(1) and (2) and "benefiting" as it is used in Section 30-52-1(A)(3). See Wilson v. Denver , 1998-NMSC-016, ¶ 16, 125 N.M. 308, 961 P.2d 153 (acknowledging that application of the plain language rule allows us to consider and "rely on rules of grammar to aid our construction ... of a statute"); see also State v. Johnson , 2001-NMSC-001, ¶ 13, 130 N.M. 6, 15 P.3d 1233 (applying "rules of grammar" when construing statute). Indeed, "knowingly" cannot properly modify "a person under the age of [eighteen] years." See William A. Sabin, The Gregg Reference Manual 667 (11th ed. 2011) (explaining that an adverbial clause functions as an adverb to the main, independent clause and may modify a verb, adverb, or adjective, but not a noun). Common usage and generally accepted principles of grammar, as well as the structure and language of the statute, indicate the Legislature intended that a jury determine whether any "recruiting, soliciting, enticing, transporting, or obtaining" was done knowingly, rather than whether the defendant knew the age of the person being recruited, solicited, enticed, transported, or obtained.
{7} Indeed, even in instances where the language of a statute is unambiguous, "a statutory subsection ... must be considered in reference to the statute as a whole." State v. Rivera , 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted) (noting courts closely examine the statute's overall structure and its function within a comprehensive legislative scheme). Considering the statute as a whole, we note that, although the Legislature used the term "knowingly" in Section 30-52-1(A) 's definition of human trafficking, it did not include any knowledge element in Section 30-52-1(C) 's assignment of different degrees of felony based on the age of the victim. Section 30-52-1(C) provides:
Whoever commits human trafficking is guilty of a third degree felony; except if the victim is under the age of:
(1) sixteen, the person is guilty of a second degree felony; or
(2) thirteen, the person is guilty of a first degree felony.
Given that the plain language indicates that "knowingly" refers to the act of "recruiting, soliciting, enticing, transporting or obtaining," or "benefiting" and in light of the Legislature's omission of a knowledge element in Section 30-52-1(C), we conclude human trafficking does not require knowledge of any of the ages enumerated in Section 30-52-1. The act of knowingly "recruiting, soliciting, enticing, transporting or obtaining," or knowingly "benefiting" is sufficient, regardless of whether the accused knows the victim is under the age of eighteen, sixteen, or thirteen. See § 30-52-1(A), (C).
{8} Our interpretation of Section 30-52-1(A)(2) is in accordance with our statewide policy that minors are entitled to special protection. State v. Gunter , 1974-NMCA-132, ¶ 6, 87 N.M. 71, 529 P.2d 297. Indeed, it is the only interpretation that furthers that purpose. The statute's language makes it *679 clear that the Legislature intended to broaden Section 30-52-1(A) 's applicability to protect minors who fall victim to sexual exploitation, rather than the individuals seeking to exploit them. See § 30-52-1(E) (precluding human trafficking victims from being charged as an accessory to the crime of human trafficking); Section 30-52-1(D) (stating that prosecution for human trafficking shall not preclude prosecution under any other provision of the law, eliminating potential for double jeopardy violations). Given the Legislature's intent and the policies underlying the human trafficking statute, we decline to expand the "knowingly" requirement as Defendant suggests to "a person under the age of eighteen." The intentional exploitation of a person under the age of eighteen for commercial sexual activity amounts to a violation of Section 30-52-1(A)(2), regardless of a defendant's actual awareness of that person's age.
{9} Defendant attempts to analogize the human trafficking statute to other statutes that our courts have already interpreted-particularly NMSA 1978, Section 30-6-3 (1990), contributing to the delinquency of a minor (CDM)-in making his argument. Defendant argues that we should require knowledge of the victim's age to be an essential element for human trafficking in the same way that this Court has required knowledge to be an essential element of CDM. As support, Defendant cites to State v. Romero , 2000-NMCA-029, ¶¶ 27, 29, 128 N.M. 806, 999 P.2d 1038, in which this Court concluded knowledge that the minor was on probation as well as the conditions of her probation were an essential element for a CDM conviction. Romero addressed the CDM prohibition against encouraging a minor to refuse to obey reasonable and lawful commands of a person who has lawful authority over the minor. Id. ¶ 4. Whether the defendant was aware of the command was an essential element for a CDM conviction largely because without it, an "endless" number of scenarios exist in which a lawful action, done without knowledge of the command placed upon the minor, would be grounds for a CDM conviction. See id. ¶ 20 (suggesting liability could be imposed for unknowingly causing a minor to be out past curfew or act contrary to parent's, educator's, or coach's instructions). This Court reasoned that, "at the very least[,]" a CDM instruction should require proof that the accused "knew or should have known the nature of the command" before being convicted of CDM. Id. ¶¶ 21, 27 (emphasis omitted).
{10} Defendant argues that a human trafficking conviction under Section 30-52-1(A)(2) should require "a degree of knowledge" regarding the victim's age just as a CDM conviction requires a degree of knowledge regarding the order or command of a third party. Romero , 2000-NMCA-029, ¶ 27, 128 N.M. 806, 999 P.2d 1038. Defendant's argument regarding the CDM statute is unpersuasive in light of this Court's opinion in State v. Lozoya , 2017-NMCA-052, 399 P.3d 410. In Lozoya , we addressed the much more specific and factually analogous issue of whether the CDM statute "requires proof that the charged adult knew the child's age." Id. ¶ 24. We characterized the issue as one of first impression, pointing out that Romero did not control our analysis because it did not specifically address whether knowledge of the child's age was an essential element of CDM. Lozoya , 2017-NMCA-052, ¶ 24, 399 P.3d 410. Looking to the general purpose of the CDM statute as well as the legislative intent to protect children, Lozoya rejected a narrow construction of the language that would limit the statute's use in protecting children, and held that "CDM does not require proof that the offending adult know the age of the child to whose delinquency the adult contributed." 2017-NMCA-052, ¶¶ 26-27, 399 P.3d 410. Given this explicit rejection of a knowledge requirement, Defendant's reliance on the CDM statute is misplaced.
{11} We also note that the majority of federal appellate courts have reached similar conclusions when faced with a similar question. Those courts have concluded that 18 U.S.C. § 2423(a) (2012), making it a crime to "knowingly transport[ ] an individual who has not attained the age of [eighteen] years" across state lines for the purpose of engaging in prostitution, does not require proof that the defendant knew the victim was under the age of eighteen despite the use of the term "knowingly" in the statute. See *680 United States v. Washington , 743 F.3d 938, 941-44 (4th Cir. 2014) (identifying "knowingly" as adverb, acknowledging minors receive special protection against sexual exploitation, and explaining the purpose of the statute to be to make the "victim's underage status an aggravating factor" and "not to make the provision protecting minors more difficult to prove"); United States v. Tavares , 705 F.3d 4, 19 (1st Cir. 2013) (adopting reasoning that minors require special protection and that age referenced in statute "is not a factor that distinguishes criminal behavior from innocent conduct, but rather serves to justify a harsher penalty when a victim is underage" (internal quotation marks and citation omitted) ); United States v. Daniels , 653 F.3d 399, 410 (6th Cir. 2011) (relying on context and the need to provide minors with special protection against sexual exploitation); United States v. Cox , 577 F.3d 833, 837-38 (7th Cir. 2009) (identifying "knowingly" as adverb that acts on verb, not noun, stating "[t]here is no good reason to read § 2423(a) differently[,]" emphasizing purpose of providing greater protection to minors, and opining that "the inclusion of age was intended to create an aggravating factor for penological purposes"); United States v. Griffith , 284 F.3d 338, 351 (2nd Cir. 2002) (refusing to require proof that the defendant knew the victim was a minor, reasoning that the victim's age was included in the statute to allow for imposition of tougher penalty); United States v. Taylor , 239 F.3d 994, 997 (9th Cir. 2001) (same); United States v. Hamilton , 456 F.2d 171, 173 (3rd Cir. 1972) (same); cf. United States v. Daniels , 685 F.3d 1237, 1248 (11th Cir. 2012) (per curiam) (analogizing similarly-worded 18 U.S.C. § 2422(b) (2012) to § 2423, recognizing need to protect minors in both statutes, and concluding § 2422(b) does not require proof that a defendant knew the victim was under the age of eighteen).
{12} Based on our plain language interpretation of the statute and the purpose and policy behind the statute, we hold that the State was not required to prove Defendant knew B.G.'s age as an element of the offense of human trafficking. We therefore need not reach Defendant's argument that the failure to instruct the jury that knowledge of B.G.'s age was an element of the crime was error.
B. Admission of Text Messages
{13} Defendant next argues that the text messages contained in an exhibit at trial were improperly admitted because the State failed to properly authenticate or lay a sufficient foundation for their admission. See State v. Imperial , 2017-NMCA-040, ¶ 28, 392 P.3d 658 (stating, "[e]vidence is properly authenticated by the production of foundational evidence 'sufficient to support a finding that the item is what the proponent claims it is.' " (quoting Rule 11-901(A) NMRA ) ). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. State v. Johnson , 2010-NMSC-016, ¶ 40, 148 N.M. 50, 229 P.3d 523. "[T]here is no abuse of discretion when the evidence is shown by a preponderance of the evidence to be what it purports to be." State v. Jimenez , 2017-NMCA-039, ¶ 18, 392 P.3d 668 (internal quotation marks and citation omitted); see Rule 11-901(A). The authentication requirement may be satisfied by evidence of "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Rule 11-901(B)(4).
{14} During a pretrial motion hearing, the district court heard arguments from both parties regarding the admissibility of the text messages. The district court conducted a painstaking review of the exhibit with the parties in an effort to determine whether each text message was admissible and reserved ruling until after the State had an opportunity to lay an adequate foundation for each message during trial.
{15} At trial, the State presented a witness who it qualified as an expert in the areas of digital analysis and digital forensic analysis. The State's expert testified that he performed a digital analysis of two cell phones. One phone was associated with a phone number beginning with the digits, 712 (hereinafter referred to as "the 712 number" or "712 phone"), while the other had a phone number beginning with the digits, 804 (hereinafter referred to as "the 804 number" or "804 phone"). Extracting information from the 712 phone, the State's expert created a phone *681 examination report setting out a timeline of that cell phone's activity between December 2012 and March 16, 2013. The report showed numerous contacts between the 712 number and the 804 number. B.G. testified that the 712 number belonged to Defendant and that the 804 number belonged to Tiffany, who worked as a prostitute and was named as Defendant's co-conspirator in the indictment.
{16} The State put on evidence that text messages in both the 712 phone and the 804 phone contained references to Tiffany and "Tiff," as well as to Defendant, and his nicknames, "Redd" and "Rock" and Defendant answered calls placed to the 804 number. One witness testified that she knew she was corresponding with Defendant on the 804 number because she recognized his voice when she called the number and his text message answers were consistent with his in-person responses. See Rule 11-901(B)(5) (acknowledging that opinion evidence identifying a person's voice through electronic transmission, in a manner that connects it with the alleged speaker satisfies the Rule's authentication requirement). In addition, copies of Defendant's personal documents, including a social security card, passport, and birth certificate, were sent via email to an email address associated with the 712 number.
{17} The State also presented evidence tying the 712 and 804 numbers to the circumstances giving rise to Defendant's human trafficking and prostitution-related charges. For instance, the State presented evidence that B.G. was depicted in an advertisement on a website known as backpage.com, which is commonly used to advertise prostitution services. That advertisement instructs interested parties to contact the 712 and 804 numbers. The 712 phone accessed backpage.com on more than one occasion and the email associated with the 712 number was listed as a means of contact in the backpage.com advertisements for B.G. and Tiffany. The 712 phone also contained photographs of B.G., some of which were also included in the backpage.com advertisement. Finally, photographs of B.G. were exchanged between the 712 number and 804 number via multimedia messages.
{18} The State's evidence linking Defendant to the 712 and 804 phones, presented prior to moving the text message exhibit into evidence, was adequate to authenticate the exhibit. It established the relevance of the 712 and 804 phones' activities, and presented sufficient evidence to show, by a preponderance of the evidence, that the information in the exhibit came from the 712 and 804 phones. See Imperial , 2017-NMCA-040, ¶ 32, 392 P.3d 658 (acknowledging authentication may be established through circumstantial evidence). We therefore conclude the district court did not abuse its discretion in admitting the exhibit into evidence.
{19} In arguing this issue, Defendant relies on evidence in the record that Defendant used the 712 and 804 phones interchangeably, rendering it possible that Defendant did not author the text messages contained in the exhibit. Defendant's argument goes to the weight of the evidence, rather than its admissibility. It was for the jury to decide whether Defendant was the author or recipient of the text messages in the exhibit. The State was free to argue that the jury should infer Defendant was the author or intended recipient of those text messages and was therefore in control of the phone when it was used to conduct activities relating to the human trafficking and prostitution-related charges. Defendant was also free to argue against those inferences by arguing that others had control of the phones and authored and received the text messages, negating Defendant's culpability. Defendant's argument that the text messages in the exhibit could have been authored or received by someone else, does not negate the admissibility of the text messages, but rather presents an alternative to the State's suggested inferences.
{20} Defendant also argues that the text messages constitute inadmissible hearsay because they did not satisfy the requirements of a hearsay exception, such as admissions by a party opponent or co-conspirator, without the State first establishing that Defendant or Tiffany were the authors. It is clear that any text messages authored by Defendant were "non-hearsay" under Rule 11-801(D)(2)(a) NMRA (characterizing a *682 statement made by the opposing party as "not hearsay). Similarly, text messages authored by Tiffany are "non-hearsay" under Rule 11-801(D)(2)(e) ; State v. Montes , 2007-NMCA-083, ¶ 11, 142 N.M. 221, 164 P.3d 102 (explaining that co-conspirator statements are not hearsay where the proponent of the evidence demonstrates, "(1) [t]he existence of a conspiracy of which the declarant and the defendant were members, (2) that the statement was made in the course of that conspiracy, and (3) that the statement was made in furtherance of that conspiracy"). Defendant does not point to anything in the record that suggests anyone other than Defendant and Tiffany had access to or used the 712 and 804 phones. Thus, with regard to text messages sent from the 712 and 804 number, the State has adequately identified the author to overcome a hearsay challenge.
{21} To the extent Defendant's hearsay argument also challenges the admission of the text messages not authored by the 712 number, the 804 number, or B.G., it appears from the record that the majority of those messages were offered for a reason other than "to prove the truth of the matter asserted in the statement." Rule 11-801(C)(2). For example, some text messages appear to be from potential clients, clarifying price and arranging a meeting place. Those messages were not offered for their truth-that the price for services was $150 per hour or that Tiffany was in a certain location at a certain time. Rather, those statements were offered to provide context and establish that Defendant and Tiffany were motivated by money to set up commercial sexual transactions. Because those messages were not offered to prove the truth of the matter asserted in the statements, they do not constitute hearsay. We therefore conclude the district court did not abuse its discretion in admitting the text messages in the exhibit.
C. Sufficiency
{22} Defendant challenges the sufficiency of the evidence supporting all five of his convictions, pursuant to State v. Franklin , 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and State v. Boyer , 1985-NMCA-029, ¶¶ 17-24, 103 N.M. 655, 712 P.2d 1. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." State v. Smith , 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. We consider each conviction in turn, keeping in mind that we "view the evidence in the light most favorable to the guilty verdict [and] indulg[e] all reasonable inferences ... in favor of the verdict." State v. Cunningham , 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.
{23} On the human trafficking count, the jury was instructed that the State must prove Defendant "knowingly recruited, enticed, transported or obtained by any means[,]" B.G. and knew or intended that B.G. "would be caused to engage in commercial sexual activity" when "[B.G.] was under eighteen years" of age. The State presented evidence that Defendant used the 712 phone and an email associated with that phone to create a backpage.com ad for B.G. The State also presented evidence that some of the photographs in the 712 phone were the same as those used in B.G.'s backpage.com ad. B.G. testified that in February 2013 Defendant took her to a gas station and dropped her off there intending for her to exchange sex for money. The State also presented evidence that B.G. was seventeen years old in March 2013 when the indictment alleges Defendant committed human trafficking. We conclude that these facts, taken in the light most favorable to the verdict, are sufficient to satisfy each element of human trafficking.
{24} On the promoting prostitution count, the jury was instructed that the State must prove beyond a reasonable doubt that Defendant, acting in a capacity other than as a prostitute or patron of a prostitute, "knowingly solicited a patron for a prostitute[.]" In addition to the evidence that Defendant used the 712 phone to create B.G.'s backpage.com ad and listed the number as the contact number in that ad, the State offered evidence that someone using the 712 phone texted, "U w[a]nt the white [expletive]?? She ready[,]" and that Defendant used that term to identify B.G. This evidence was sufficient to support Defendant's conviction for promoting prostitution.
*683 {25} The jury was instructed that Defendant was guilty of accepting the earnings of a prostitute if the State proved beyond a reasonable doubt that Defendant "accepted or received money ... without consideration, from the proceeds of the earnings of [B.G.], a person engaged in prostitution[,]" and Defendant knew that B.G. was engaged in prostitution and he received proceeds from her acts of prostitution. B.G. testified that she gave Defendant money she received as a result of various sexual transactions. Defendant suggests that there is insufficient evidence to support this conviction because there was also evidence to suggest B.G. gave the money to Defendant of her own accord. This potential conflict in the evidence does not negate the sufficiency of the evidence to support the conviction. It is for the jury to resolve conflicts in the evidence at trial, and we resolve conflicts in the light most favorable to the verdict. See State v. Salas , 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 ; see also Cunningham , 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.
{26} The jury was instructed that to find Defendant guilty of contributing to the delinquency of a minor, the State must prove beyond a reasonable doubt that Defendant "instructed [B.G.] on how to prostitute" and caused or encouraged B.G. to either commit the act of prostitution or "conduct herself in a manner injurious to her morals, health or welfare[.]" The evidence presented at trial was that Defendant instructed Tiffany to create the backpage.com ad for B.G., and explained to B.G. that she would use the ad in order to exchange sex for money. Defendant also informed B.G. when and where to meet people who responded to the backpage.com ad.
{27} Defendant again challenges the sufficiency of the evidence by asserting that the State failed to prove he encouraged B.G. to commit the act of prostitution because there was evidence B.G. chose to do so voluntarily. Again, it was for the jury to resolve the conflicting evidence at trial, and we resolve any conflicts in favor of the verdict. See Salas , 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 ; see also Cunningham , 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Taking the evidence in the light most favorable to the verdict, we conclude there was sufficient evidence to support Defendant's conviction on this count.
{28} The jury was also instructed on conspiracy to commit human trafficking, which requires that the State prove Defendant and another person "by words or acts agreed together to commit human trafficking" and intended to commit human trafficking. The State presented evidence that Defendant instructed Tiffany to post a backpage.com ad for B.G. and that Tiffany agreed to do so. We conclude that there was sufficient evidence to support Defendant's conviction on this count.
{29} After reviewing the record, we conclude that the evidence presented is sufficient, when considered in the light most favorable to the verdict, to support each of Defendant's convictions.
D. Denial of Motion for New Trial
{30} Finally, Defendant also challenges the district court's denial of his motion for a new trial, pursuant to Franklin , 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and Boyer , 1985-NMCA-029, ¶¶ 17-24, 103 N.M. 655, 712 P.2d 1. Defendant claims newly discovered evidence in the form of a recording of all or part of a post-trial phone conversation[1] between Defendant's sister and B.G. revealed B.G. had not been truthful during her trial testimony. At some point during the course of the conversation, Defendant's sister asked B.G. why she lied at trial. B.G.'s response, however, was, "'[T]hey told me that if I didn't say anything that I would have to stay in jail[,]" which the State contended, meant that if she did not testify, the *684 court could hold her in contempt. B.G. never affirmatively admitted to having been untruthful during her testimony.
{31} The district court denied the motion, concluding that Defendant failed to establish two of the six requirements for succeeding on such a motion-that the evidence was not merely for impeachment purposes and that it would have changed the result of the trial. On appeal, Defendant asserts the district court erred in denying the motion for new trial.
{32} A motion for new trial based on newly discovered evidence may be made within two years of final judgment. Rule 5-614(C) NMRA. An appellate court "will not disturb [the district] court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." State v. Garcia , 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638. The evidence that gives rise to a motion for new trial based on newly discovered evidence must fulfill six requirements:
1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.
Id. ¶ 8 (internal quotation marks and citation omitted).
{33} Defendant argues that the recorded conversation demonstrates B.G. lied when testifying at trial, and that at a new trial, she might testify differently. We are unpersuaded by Defendant's argument. Review of the record reveals that if probative of any issue at all, it is clear that the recorded conversation went to the truthfulness of B.G.'s testimony. Even when arguing the motion for new trial to the district court, defense counsel acknowledged that the evidence went to the truthfulness of B.G.'s testimony, referring to the phone call as evidence of "untruthful, perjured testimony." Furthermore, while Defendant argues on appeal that at a new trial, B.G. might testify differently, nothing in the recorded conversation even suggests what B.G.'s testimony at a new trial might be, how it might differ, or how it might assist Defendant, other than to impeach B.G.'s credibility. See id. Defendant already availed himself of the opportunity to thoroughly address any discrepancies or conflicts in B.G.'s testimony during trial through cross-examination. B.G.'s credibility was an issue that Defendant had already explored extensively at trial.
{34} Finally, our courts treat attacks on the veracity of trial testimony with extreme caution. Cf. State v. Betsellie , 1971-NMSC-076, ¶ 12, 82 N.M. 782, 487 P.2d 484 (stating, "courts must act with great reluctance and with special care and caution before accepting the truth of a claim of perjury, and should properly require the evidence to affirmatively establish the perjury in such clear and convincing manner as to leave no room for reasonable doubt that perjury was committed" and ultimately refusing to remand due to doubts as to the adequacy of affidavits presented through post-trial motion). The evidence provided to the district court is far from the conclusive evidence necessary to demonstrate its usefulness as more than impeachment evidence. Because Defendant has failed to show that the recorded conversation is not merely impeaching or contradictory and cannot, therefore, satisfy all six requirements for a new trial based on newly discovered evidence, we conclude that the district court did not abuse of its discretion by denying Defendant's Rule 5-614(C) motion.
CONCLUSION
{35} We affirm Defendant's convictions.
{36} IT IS SO ORDERED.
WE CONCUR:
MICHAEL E. VIGIL, Judge
STEPHEN G. FRENCH, Judge

For some unknown reason, the actual recording of the conversation, which the trial court entered as an exhibit, was irretrievably lost. The transcript, which was not formally entered as an exhibit, is contained in the record but its accuracy was the subject of some dispute between the parties in the district court. Given that our conclusion is based on language in the written motions and statements made during the hearings on the motion; however, this irregularity does not preclude our review of the issue, and we need not address it.