Certiorari Denied, May 31, 2017, No. S-1-SC-36449

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2017-NMCA-052

Filing Date:  April 5, 2017

Docket No. 34,651

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

BRANDON LOZOYA,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
Angie K. Schneider, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

SUTIN, Judge.

{1}     Defendant Brandon Lozoya was charged and convicted by a jury of contributing to the delinquency of a minor (CDM), in violation of NMSA 1978, Section 30-6-3 (1990), and shoplifting, in violation of NMSA 1978, Section 30-16-20(A)(1) (2006). On appeal, Defendant argues (1) that his convictions for CDM and shoplifting as an accessory violate

1

double jeopardy; (2) alternatively, his conviction for CDM violates the plain language of Section 30-16-20(C), under a statutory construction analysis; (3) the State failed to present sufficient evidence of CDM; (4) the district court erred in failing to include knowledge of age as an element in the CDM instruction; (5) the district court erred in allowing the State to impeach Defendant with his prior conviction; and (6) the prosecutor committed prosecutorial misconduct during closing argument. We hold that Defendant's convictions for CDM and shoplifting violate double jeopardy, and for the reasons stated in this opinion, we reverse and remand with instructions to vacate the shoplifting conviction.

**BACKGROUND**

**{2}**    Defendant was at a house party in Alamogordo, New Mexico, when he was offered a ride to Walmart to get more alcohol. He accepted the ride, and when he entered the backseat of a female friend's vehicle, he noticed that a third person, Child, was in the front passenger seat. Defendant and Child had never met each other before. The three individuals drove for approximately three to four minutes to Walmart. When they arrived, Defendant and Child got out of the car, entered Walmart, and headed toward the alcohol section.

**{3}**    Defendant and Child dispute what was known to Defendant before entering Walmart and while they were in Walmart's alcohol section. Child testified that her intent when she was dropped off at Walmart was to steal bottles of alcohol. She testified that she had discussed her intent to shoplift with Defendant, and Defendant "looked out to see if anyone was coming" while she shoplifted. According to Child, Defendant pointed out bottles of alcohol that he wanted, but she instead only placed bottles she wanted in her purse. Child testified that she told Defendant that she did not have any money. Child admitted that she did not tell Defendant her age and admitted that she had never met Defendant before that night.

**{4}**    Defendant testified that no one suggested stealing liquor and that he had no idea Child intended to shoplift. According to Defendant, he did not know Child was shoplifting until she had taken a second bottle. Defendant also testified that he had no idea how old Child was and assumed she was twenty-one years old.

**{5}**    After Child placed two bottles of alcohol in her purse, Defendant and Child headed toward the exit. They were stopped by a Walmart asset protection associate who asked that they return the bottles. The associate testified that her observations made her believe that Defendant and Child were there together, and she believed that Defendant was assisting Child in picking out merchandise to steal. She further testified that Defendant asked her if she would agree to not call the police if they returned the items. The items were returned, and Child and Defendant left Walmart separately. The associate called the police, and Child and Defendant were both apprehended by law enforcement.

**{6}**    For his role in the crime, Defendant was charged with shoplifting under $250 (a petty misdemeanor) and CDM (a fourth degree felony). Prior to trial, Defendant moved to keep

2

out the names or nature of his prior convictions for robbery and possession of cocaine if he testified. The court deferred ruling at that time, but at trial denied the motion, finding that the probative value for impeachment purposes outweighed any prejudicial effect. At trial, Defendant testified in his own defense, and during direct examination, admitted he had previously been convicted of robbery and possession of cocaine. On cross-examination, the State further questioned Defendant about his prior convictions. He also questioned whether Defendant was under the influence of illegal drugs on the night in question and asked whether he had a sexual interest in Child.

**{7}** During closing argument, the prosecutor remarked, "What is a twenty-seven-year-old man doing with a fifteen-year-old girl and another young lady in the car . . . ? Well, nothing good I expect." He also referenced the fact that a condom packet was found in Defendant's pocket after he was apprehended and searched by law enforcement, suggested that alcohol, minors, and condoms were "[n]ot a recipe for a good ending[,]" and pleaded to the jury "[d]on't allow him to do this to our children." According to the prosecutor, "[Defendant] went there with one purpose. To get booze and to have some fun that night. You can infer the rest." The prosecutor also mentioned, "regarding [the] issue of credibility," Defendant's prior convictions, and categorized him as a "two-time felon." Defendant was convicted on both counts, and this appeal followed.

## DISCUSSION

### I. Double Jeopardy

**{8}** We begin by analyzing Defendant's claim that his CDM and shoplifting convictions violate double jeopardy and that this Court must vacate one of his convictions. Because we ultimately reverse Defendant's shoplifting conviction on double jeopardy grounds, we need not and do not separately address his statutory construction argument that appears to rely almost entirely on the logic and case law set forth in his double jeopardy argument.

**{9}** "The Fifth Amendment of the United States Constitution prohibits double jeopardy and is made applicable to New Mexico by the Fourteenth Amendment." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747; *see* U.S. Const. amends. V & XIV, § 1. The right to be free from double jeopardy protects, in relevant part, "against multiple punishments for the same offense." *State v. Montoya*, 2011-NMCA-074, ¶ 29, 150 N.M. 415, 259 P.3d 820 (internal quotation marks and citation omitted). The specific type of multiple punishment case we are dealing with here, where Defendant was convicted of crimes under two separate statutes,

> is categorized as a double[]description case, which prohibits charging a defendant with violations of multiple statutes for the same conduct in violation of the Legislature's intent. In such a case, double jeopardy bars a conviction if the conduct underlying the two offenses is unitary and the Legislature has not indicated an intent to punish the same conduct separately.

3

*Id.* ¶ 30 (alterations, internal quotation marks, and citations omitted). A double jeopardy challenge is a constitutional question of law that the appellate courts review de novo. *Swick*, 2012-NMSC-018, ¶ 10.

**{10}** The parties agree that the conduct underlying the CDM conviction and the shoplifting conviction was unitary and that, under a double description analysis, a double jeopardy violation exists. However, the parties disagree about which conviction should be vacated. Defendant argues that the CDM charge must be vacated because according to Section 30-16-20(C), "[a]n individual charged with a violation of this section shall not be charged with a separate or additional offense arising out of the same transaction[,]" and thus, the Legislature intended to bar punishment for CDM in cases, such as this, where CDM and shoplifting arose out of the same transaction. Defendant also argues that "[t]o the extent the reach of this statute is ambiguous, the rule of lenity applies" and that the Court should therefore vacate his CDM conviction as opposed to his shoplifting conviction. *See State v. Santillanes*, 2001-NMSC-018, ¶ 34, 130 N.M. 464, 27 P.3d 456 ("The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." (internal quotation marks and citation omitted)).

**{11}** The State argues that under double jeopardy jurisprudence the shoplifting conviction, a petty misdemeanor that carries a lesser punishment, must be vacated, while the CDM conviction, a felony, must stand. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 ("[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence."); *State v. Lee*, 2009-NMCA-075, ¶ 16, 146 N.M. 605, 213 P.3d 509 ("When double jeopardy exists, the offense carrying the lesser punishment is to be vacated."). Defendant acknowledges that "typically the lesser conviction is vacated when both violate double jeopardy" but he asserts that the language in the shoplifting statute indicates that the Legislature intended only that shoplifting be charged.

**{12}** In evaluating that essential issue of whether we should vacate the shoplifting conviction or the CDM conviction, we are persuaded that the appellate courts' general practice of vacating the conviction carrying the shorter sentence in cases where double jeopardy protections have been violated is the proper approach here. In support of this approach of vacating the conviction with the lesser punishment, our Supreme Court has held that "[a]s a matter of separation of powers, it is the exclusive prerogative of the Legislature, the law-making branch of our representative democracy, to determine relative seriousness and punishment for criminal offenses." *Montoya*, 2013-NMSC-020, ¶ 56. Moreover, "as a matter of policy, it would be unacceptable for us to hold that where a person's criminal conduct would have violated either of two statutes, a defendant can escape liability for the one carrying the greater punishment by committing the crime in such a manner as to also violate the statute carrying the lesser penalty." *Id.*

**{13}** We further note that the approach of vacating the conviction carrying the lesser

punishment has also been utilized specifically in the context of Section 30-16-20(C). In *State v. Ramirez*, 2008-NMCA-165, 145 N.M. 367, 198 P.3d 866, this Court considered whether to vacate a shoplifting conviction or a burglary conviction when it was determined that the two convictions violated the language of Section 30-16-20(C). The *Ramirez* Court stated that Section 30-16-20(C) evidenced a legislative intent that shoplifters not be "charged with multiple crimes arising from a single instance of shoplifting" and that:

> The prohibition on additional charges means the shoplifting charges were null when brought. It is for the [prosecution] to decide which charges to bring based upon the circumstances. Here, the [prosecution] chose burglary. Adding two charges of shoplifting in violation of the statutory limitation on additional charges was explicitly prohibited by the plain language of Section 30-16-20(C). Therefore, we vacate [the d]efendant's convictions for two counts of shoplifting and remand to the district court for resentencing.

*Ramirez*, 2008-NMCA-165, ¶¶ 16-17.

**{14}** Finally, the rule of lenity does not assist Defendant in his proposition that this Court should vacate the CDM conviction as opposed to the shoplifting conviction. The rule of lenity applies in cases where there is "insurmountable ambiguity" regarding legislative intent, and it "does not apply to a determination of which conviction to vacate as a result of impermissible multiple punishments." *Santillanes*, 2001-NMSC-018, ¶¶ 33, 34.

**{15}** In sum, we are not persuaded that the Legislature intended Section 30-16-20(C) to apply in double jeopardy circumstances to require the shoplifting conviction to stand and the other conviction to be vacated. Because our common law guides us to vacate the lesser offense and because the rule of lenity does not apply, we vacate the shoplifting conviction as opposed to the CDM conviction.

## II.      Sufficiency of the Evidence

**{16}** Defendant next argues that the State failed to present sufficient evidence of CDM. Specifically, he argues that (1) one of the alternatives in the jury instruction that Defendant "allowed [Child] to shoplift" was legally inadequate under the statutory definition of the crime, and (2) the State was required to prove and failed to prove that he knew Child was under the age of eighteen.

**{17}** When reviewing claims of insufficient evidence, we "resolve all disputed facts in favor of the [prosecution], indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 (internal quotation marks and citation omitted). We then determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Sanders*, 1994-NMSC-043, ¶ 11, 117 N.M. 452, 872 P.2d 870. The issues of whether

Defendant allowed Child to shoplift was legally adequate under the statute and whether the State was required to prove that Defendant knew Child was a minor are legal issues that require statutory construction for which our review is de novo. *See, e.g.*, *State v. Neatherlin*, 2007-NMCA-035, ¶ 8, 141 N.M. 328, 154 P.3d 703 ("The issue of whether [the d]efendant's mouth is a deadly weapon is one of law, applying law to the facts and requiring statutory construction; our review is de novo." (internal quotation marks and citation omitted)).

## A. Legal Adequacy of Alternatives

**{18}** Defendant argues that the first alternative in the CDM jury instruction that Defendant allowed Child to shoplift is "legally inadequate" and not within the statutory definition of the crime. "[A] conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate and it is impossible to tell which ground the jury selected." *State v. Downey*, 2008-NMSC-061, ¶ 40, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted). Defendant points to New Mexico civil case law, recognizing that "[a]s a general rule, an individual does not have a duty to control the acts of a third party in the absence of a duty imposed by statute or recognized as a result of a special relationship that exists between a defendant and the tortfeasor." *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 25, 132 N.M. 312, 48 P.3d 50; *see Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 7, 140 N.M. 596, 145 P.3d 76 ("To impose a duty, a relationship must exist that legally obligates [the d]efendant to protect [the p]laintiff's interest. Absent such a relationship, there exists no general duty to protect others from harm." (citation omitted)); *see also Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 7, 146 N.M. 520, 212 P.3d 408 (recognizing that "absent a special relationship, there is no duty to protect others from harm caused by criminal acts of third persons"). Defendant argues that, as a "virtual stranger" to Child, he had no responsibility for Child or her actions, and it was not his responsibility to stop her from shoplifting. Defendant asserts that because he had no duty to Child, any omission or failure to act is legally inadequate to prove CDM.

**{19}** In response, the State argues that the CDM conviction was based on legally adequate alternatives. It asserts that, given the definition of "allow" as provided in *Black's Law Dictionary*, the jury could have found Defendant guilty by determining that Defendant "committed an act of showing approval for or consenting to[] the shoplifting." The State also disagrees with Defendant's portrayal of himself as a stranger to Child. The State agrees that a stranger should not be charged with CDM if merely in the presence of a minor but argues that Defendant and Child were not strangers.

**{20}** We are unpersuaded by Defendant's arguments that he had no duty to Child and thus the State's theory of his guilt predicated on the fact that he "allowed Child to shoplift" was legally inadequate. There was sufficient evidence for a jury to conclude that Defendant and Child were acquainted to a degree that they were not strangers or "virtual strangers."

**{21}** In this case, Child testified that she had driven to Walmart with Defendant and had discussed her shoplifting with him. Defendant "looked out to see if anyone was coming"

while she shoplifted. Child testified that she told Defendant that she did not have any money. The asset protection associate at Walmart testified that Defendant and Child appeared to be working together, and she believed that Defendant was assisting Child in picking out merchandise. Child and Defendant left Walmart separately but were ultimately apprehended together by law enforcement. Given the facts of this case, we decline to conclude that the alternative of allowing Child to shoplift fails to come within the statutory definition of the crime or that it is beyond the intended reach of the statute, as argued by Defendant. *See Griffin v. United States*, 502 U.S. 46, 59 (1991) (indicating that "[j]urors are not generally equipped to determine whether . . . the action in question . . . fails to come within the statutory definition of the crime"). Child's testimony provided sufficient evidence to convict Defendant of CDM.

## B.      Knowledge of Child's Age

{22}      Defendant also argues that the State failed to present sufficient evidence that Defendant knew Child was under eighteen. He argues that CDM is not a strict liability offense and asserts that the State should have been required to prove that he knew Child was under eighteen as an essential element of CDM. In an attempt to bolster his position, Defendant points to CDM cases where the charged adult had reason to know the age of the child. *See, e.g.*, *State v. Trevino*, 1993-NMSC-067, ¶ 2, 116 N.M. 528, 865 P.2d 1172 (stating that the child was a fourteen-year-old child employed by the defendant); *State v. Cuevas*, 1980-NMSC-101, ¶ 4, 94 N.M. 792, 617 P.2d 1307 (stating that the defendant, who was a teacher, attended a party with minors from school and demonstrated drinking alcohol), *overruled on other grounds by State v. Pitts*, 1986-NMSC-011, 103 N.M. 778, 714 P.2d 582; *State v. Webb*, 2013-NMCA-027, ¶ 2, 296 P.3d 1247 (stating that the defendant picked up her daughter and daughter's friends from middle school); *State v. Dietrich*, 2009-NMCA-031, ¶¶ 59-60, 145 N.M. 733, 204 P.3d 748 (stating that the child was released twice to the defendant from a youth detention facility); *State v. Stone*, 2008-NMCA-062, ¶ 5, 144 N.M. 78, 183 P.3d 963 (stating that the defendant bought alcohol for his fifteen-year-old daughter and her friends).

{23}      The State argues that knowledge of the age of Child need not be proved for a CDM conviction. The State looks to other states that have concluded CDM does require knowledge but that the mental state only applies to the act of contributing to the delinquency not to the child's age. *See, e.g.*, *Gorman v. People*, 19 P.3d 662, 667 (Colo. 2000) (en banc) (holding that "the culpable mental state of 'knowingly' [in Colorado's CDM statute] does not apply to the statute's age element"). The State asserts that the purpose of the statute is to protect children who may be "led astray" and that including knowledge of the child's age as an element of CDM "would require [that] the child, the individual the statute inten[d]s to protect, hold some sort of responsibility to the adult to provide information as to his or her age." According to the State, that would be an absurd consequence and would undermine the purpose of the statute. Additionally, the State argues that even if this Court determines that the prosecution was required to prove that Defendant knew Child was under the age of eighteen, any potential prejudice was cured by the mistake of fact instruction that was given

to the jury.

**{24}** The specific question of whether New Mexico's CDM statute requires proof that the charged adult knew the child's age is an issue of first impression. This Court has previously held that "where the [prosecution] seeks to convict a defendant of CDM for causing or encouraging a minor to refuse to obey the reasonable and lawful command or direction of the minor's parent . . . the [prosecution] must prove . . . that the defendant knew or by the exercise of reasonable care should have known of such command or direction." *State v. Romero*, 2000-NMCA-029, ¶ 31, 128 N.M. 806, 999 P.2d 1038. *Romero*, however, did not address knowledge of the child's age as an essential element. We also note that the CDM cases cited by Defendant, in which the charged adult had reason to know the age of the child, do not assist this Court because knowledge of the child's age in those cases was not the issue on appeal. *See Fernandez v. Farmers Ins. Co.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (stating that generally "cases are not authority for propositions not considered" (internal quotation marks and citation omitted)).

**{25}** Although this Court has not specifically addressed the issue now before us on appeal, we have considered whether proof of criminal intent is generally required as an essential element of CDM. *State v. Gunter*, 1974-NMCA-132, ¶ 4, 87 N.M. 71, 529 P.2d 297. In *Gunter* we stated that "[a] reading of the statute indicates the [L]egislature did not intend that criminal intent be an element of the offense of [CDM]." *Id.* ¶ 5. In support of that conclusion, we noted that "[i]nfants have generally been a favored class for special protection in New Mexico" and held that the Legislature intended to make the commission of CDM a crime without regard to intent. *Id.* ¶¶ 6-7. *Gunter* is instructive. And our Supreme Court "has tacitly approved . . . that the [CDM] statute is constitutional although it imposes criminal sanctions for acts committed without criminal intent." *Pitts*, 1986-NMSC-011, ¶ 11.

**{26}** It is well established that "the intent of the Legislature in enacting [the CDM statute,] Section 30-6-3 and its predecessors was to extend the broadest possible protection to children, who may be led astray in innumerable ways. In order to realize this legislative purpose, [the appellate courts] have consistently rejected narrow constructions of the statute that would limit its usefulness in protecting children." *Id.* ¶ 10; *see also Cuevas*, 1980-NMSC-101, ¶ 12 ("[T]he purpose of our contributing statute is to protect children from harmful adult conduct."); *State v. McKinley*, 1949-NMSC-010, ¶ 13, 53 N.M. 106, 202 P.2d 964 (holding that the purpose of a predecessor CDM statute was "to protect the youth of our state from those evil and designing persons who would lead them astray, and [the appellate courts] are not disposed to in any way impair its usefulness by giving any narrow or strained construction to any of its plain and obvious provisions" (internal quotation marks and citation omitted)).

**{27}** Given the purpose of the CDM statute, we decline to narrowly construe the statute or limit its application by imposing a knowledge requirement as requested by Defendant. We conclude that CDM does not require proof that the offending adult know the age of the child to whose delinquency the adult contributed. Because we hold that CDM does not require

8

proof that the offending adult know the at-issue child's age, we need not address Defendant's argument that failure to provide a knowledge-of-age element to the jury instruction constituted error.

## III. Evidence of Defendant's Prior Conviction

{28}     The appellate courts "review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Unless this Court concludes that the district court's ruling was clearly untenable or not justified by reason, we will not hold that the district court abused its discretion. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829.

{29}     Defendant argues that the district court erred in allowing the State to impeach him with his prior robbery conviction. He argues that his prior robbery conviction was not a crime of dishonesty, and even if it was, its probative value was weakened by its remoteness because it occurred almost ten years prior. He also argues that the State sought to include evidence of his prior conviction for improper propensity purposes—i.e., to portray Defendant as a person who steals. He argues that admission of his prior conviction was used as substantive evidence of guilt and that admission of the prior conviction deprived Defendant of a fair trial.

{30}     The State responds that the district court properly admitted evidence of Defendant's prior robbery conviction. It argues that when Defendant took the stand in his own defense, subjecting himself to cross-examination, the prosecution appropriately seized the opportunity to question his credibility under Rule 11-609 NMRA. The State agrees that the crimes of robbery and shoplifting/CDM are similar in nature but argues that evidence of Defendant's prior conviction should not be prohibited based solely on the similarity of the crime. The State also argues that the fact Defendant's prior conviction occurred almost ten years prior does not impact its admissibility because Rule 11-609(B) only limits admission if more than ten years has elapsed. Finally, the State argues that the district court properly weighed the probative value of the evidence of Defendant's prior conviction and correctly determined that any prejudice was substantially outweighed.

{31}     Rule 11-609(A)(1)(b) allows for impeachment of a witness by evidence of a criminal conviction. Rule 11-609(A)(1)(b) states that when

> attacking a witness's character for truthfulness by evidence of a criminal conviction[] for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one . . . year the evidence must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

9

Thus, because Defendant chose to act as a witness and testify on his own behalf, his character for truthfulness could be impeached by evidence of his prior convictions, so long as the evidence's probative value outweighed its prejudicial effect. Rule 11-609(B) further limits the use of a prior criminal conviction, but only applies if "more than ten . . . years have passed since the witness's conviction or release from confinement for it, whichever is later." Because the ten-year limitation did not apply to Defendant's conviction, the State was not limited by Rule 11-609(B).

**{32}** We conclude that the district court did not abuse its discretion in holding that evidence of Defendant's prior robbery conviction was admissible as impeachment evidence. Defendant chose to testify in his defense, and his version of the incident conflicts with the version of the State's witnesses. Defendant's credibility was placed at issue, and we cannot say that the probative value for impeachment purposes failed to outweigh its prejudicial effect. Defendant denied involvement in Child's shoplifting scheme and denied knowing Child's age. Child, however, testified that she informed Defendant of her plan and that Defendant acted as her lookout. Thus, Defendant's credibility was a central issue. "Under such circumstances, it became more, not less, compelling to explore all avenues which would shed light on which of the two witnesses was to be believed." *State v. Trejo*, 1991-NMCA-143, ¶ 15, 113 N.M. 342, 825 P.2d 1252 (internal quotation marks and citation omitted).

**{33}** Although Defendant's robbery conviction and the shoplifting conviction could be considered similar in some respects and "convictions for the same crime should be admitted sparingly[,] . . . evidence of a prior offense is not prohibited for impeachment purposes solely on the basis of its similarity with the presently charged crime." *Id.* ¶ 12 (citation omitted). We reject Defendant's argument that his robbery conviction should not have been admitted under Rule 11-609 because it was a crime of violence, as opposed to a crime of dishonesty. This Court has specifically held that robbery is a crime that involves dishonesty. *See State v. Day*, 1978-NMCA-018, ¶ 38, 91 N.M. 570, 577 P.2d 878 ("[R]obbery may not be a crime involving deceit, that is, false statement. However, it clearly involves theft, which is dishonesty."). As this Court noted in *Trejo*, "[w]hen an accused takes the witness stand he is in the same position as any other witness. He is not entitled to have his testimony falsely cloaked with reliability by having his credibility protected against the truth-searching process of cross-examination." 1991-NMCA-143, ¶ 15 (internal quotation marks and citation omitted).

## IV. Prosecutorial Misconduct

**{34}** Finally, Defendant argues that the prosecutor committed prosecutorial misconduct during closing argument in making improper propensity arguments, mischaracterizing the evidence, and arguing in a manner designed to appeal to sentiment and passion by painting Defendant as a sexual predator of children when no evidence supported that characterization. Specifically, Defendant notes the following statements by the prosecutor: Defendant was a "two-time felon"; the questioning of Defendant's motives for being "with a fifteen-year-old

girl and another young lady"; "[d]on't allow him to do this to our children"; and that the jury could "infer the rest" after noting, "Alcohol. Minors. Two females. Condoms. Not a recipe for a good ending." Not having objected at the time of the comments, Defendant argues that the prosecutor's misconduct resulted in fundamental error, and he requests that this Court reverse his convictions which, he asserts, were the result of an unfair trial.

**{35}** The State argues that the comments made by the prosecutor in his closing argument were "few and far between" and "a far cry from persistent or egregious." It argues that the prosecutor could comment on the credibility of Defendant's testimony during closing. Additionally, the State argues that the prosecution's argument regarding Defendant's intent to continue partying was based on properly admitted evidence and thus did not constitute prosecutorial misconduct.

**{36}** When, as in this case, no claim of prosecutorial misconduct was raised at trial, this Court reviews for fundamental error. *See State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citation omitted). "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial, and [the appellate courts] will reverse a conviction despite defense counsel's failure to object." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. To determine whether Defendant was deprived of a fair trial, the appellate courts "review the comment in context with the closing argument as a whole . . . so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). "[T]he general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." *Sosa*, 2009-NMSC-056, ¶ 29 (internal quotation marks and citation omitted).

**{37}** Upon reviewing the record, we conclude that the prosecutor's closing argument, when evaluated as a whole, did not deprive Defendant of a fair trial. We conclude that the prosecutor's statements regarding Defendant's criminal history referenced properly admitted evidence and did not constitute improper propensity evidence. The prosecutor's mention of Defendant's history was not the primary focus of the State's closing argument, and we cannot say that it clearly impacted the jury's verdict. Although we see no misconduct regarding the prosecutor's portrayal of Defendant as a two-time felon, we can see no legitimate reason why the prosecutor would attempt to impute meaning to the fact that Defendant had a condom in his pocket, or why the prosecutor would indicate that alcohol, minors, and condoms were "[n]ot a recipe for a good ending." The prosecutor's clear attempt to portray Defendant as a sexual predator was unnecessary and improper.

**{38}** Despite our view that the prosecutor acted improperly when making certain comments, we cannot conclude that the isolated comments that occurred over the course of the prosecutor's more than twenty-five-minute closing were "so egregious and had such a

11

persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial[,]" thus giving rise to fundamental error. *Allen*, 2000-NMSC-002, ¶ 95 (internal quotation marks and citation omitted).

**CONCLUSION**

**{39}** For the foregoing reasons, we reverse and remand with instructions to vacate Defendant's shoplifting conviction, and we affirm Defendant's CDM conviction.

**{40} IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**