This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38110**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**ALBERT FERNANDEZ,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Michael H. Stone, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Albert Fernandez (Defendant) appeals his convictions for one count of battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971) and one count of careless driving, contrary to NMSA 1978, Section 66-8-114(A) (1978). On appeal Defendant argues (1) the district court erred in admitting evidence of Defendant's prior conviction for battery upon a peace officer[1]; (2) the State committed prosecutorial

---

1In making this argument, Defendant refers to his prior "conviction" and "convictions" interchangeably. Although during trial other convictions, including criminal damage to property were referenced during

misconduct in referencing evidence outside of the record during its closing arguments; (3) cumulative error requires reversal; and (4) insufficient evidence supports Defendant's conviction for careless driving. We affirm.

**BACKGROUND**

**{2}**     The following facts are based on the evidence presented to the jury during Defendant's trial. In March 2018, Officer Jorge Soriano of the Hobbs Police Department stopped Defendant after witnessing and hearing Defendant's vehicle peel out at a traffic light. Upon making contact with Defendant, Officer Soriano observed that Defendant had bloodshot eyes and smelled of alcohol. Officer Seth Ford, as well as an officer in training, joined Officer Soriano at the scene. Officer Ford asked Defendant to submit to field sobriety tests to which Defendant agreed. Up until performing the first field sobriety test, Defendant generally complied with requests from the officers.

**{3}**     Officer Ford attempted to administer the horizontal eye gaze nystagmus test to Defendant, but Defendant struggled to perform the test, became argumentative, and used profanity with Officer Ford. After repeated attempts to administer the test, Officer Ford arrested Defendant for suspicion of driving under the influence of alcohol. While being placed in a patrol vehicle Defendant physically struggled with Officers Ford and Soriano.

**{4}**     Officer Soriano testified that Defendant struck Officer Ford with his head and was kicking while being placed in the vehicle. Officer Ford also testified that Defendant struck him with his head and kicked him. Officer Soriano's dash cam recording and body cam recording of his stop of Defendant's vehicle and the officers' interactions and arrest of Defendant were admitted and played for the jury. The lapel camera footage of the arrest depicts Defendant waving his arms, talking back to the officer, yelling toward an unknown individual, and using profanity as the officer attempted to administer the first field sobriety test. The footage showed Defendant used profanity while being cuffed, and after being walked to the patrol vehicle, using his body to push or lean in the direction of Officer Ford at which point the officer responds, "You just hit me with your head." However, the angle of the camera is such that it does not capture where any contact between Defendant and Officer Ford would have taken place. The lighting near the patrol vehicle is dark, and though you can hear a struggle and the officer telling Defendant to stop kicking him, the video recording is too dark to show what occurs during the struggle.

**{5}**     At the close of the State's case, defense counsel presented an opening statement in which he stated that the "major thing [Defendant was going to tell the jury . . .was] his state of mind" during his struggle with the officers and that Defendant would tell them that he never head-butted or kicked Officer Ford and was surprised when he was informed that he would be charged with battery. Consistent with defense counsel's statement, Defendant testified that he was trying to comply with the officers and denied

---

Defendant's testimony, the thrust of his arguments on appeal focus on his prior conviction for battery upon a peace officer.

intentionally striking Officer Ford. During cross-examination, Defendant similarly denied head-butting or kicking Officer Ford and shortly after his denial, the State sought permission to impeach Defendant with his prior convictions. Defense counsel objected. Because the recorded transcript of the conference following the objection was inaudible, this Court remanded this case to the district court for reconstruction of the transcript.

**{6}** Upon remand and reconstruction, the district court issued an order setting out the reconstructed bench conference. In relevant part, the district court's order reads as follows:

> The State requested . . . permission to approach the bench during its cross-examination of Defendant. At the bench the State said[,] "State intends to impeach the witness at this point with prior felony convictions." Defense counsel starts to respond saying "at this time" and as defense counsel spoke, the court stated[,] "[H]e can ask, he can ask." Defense counsel objected that it would be more prejudicial than probative, and the court informed defense counsel that the defense had opened the door, without expanding on how.

**{7}** After hearing the parties' arguments, the district court instructed the State to continue its cross-examination during which the following colloquy occurred:

| | |
|---|---|
| State: | Mr. Fernandez, do you have a felony conviction? |
| Defendant: | I do. |
| State: | Do you know what the charge is on CR-2018? |
| Defense: | Your Honor, objection once again for the record, . . . he did not open the door to this. |
| Court: | For the record I note your objection I will overrule it, you may proceed Mr. Moore. |
| State: | You have a conviction in CR-2016-628? |
| Defendant: | I don't know what that refers to. |
| State: | It was a 2016 case; do you remember what you were charged with? |
| Defendant: | I have a couple of them. |
| State: | Alright, do you remember what your charges were? |
| Defendant: | Criminal damage to property. |
| State: | Do you remember that you were charged with battery on a peace officer in that case? |
| Defendant: | No, it was another one though. |
| State: | Is that correct? |
| Defendant: | Yes. |
| Defense: | Your Honor I will make an ongoing for the record, it's an ongoing objection. |
| Court: | Noted, overruled. |
| State: | Thank you, nothing further. |

On redirect, Defendant reiterated that he did not strike Officer Ford. At the conclusion of evidence, the jury convicted Defendant on all charges. This appeal followed.

**DISCUSSION**

**{8}** On appeal, Defendant argues that the district court erred in admitting evidence of Defendant's prior conviction for battery on a peace officer; the State committed prosecutorial misconduct in referencing evidence outside of the record during its closing arguments; cumulative error requires reversal; and insufficient evidence supports Defendant's conviction for careless driving. We address each argument in turn.

**I. Defendant's Prior Convictions**

**{9}** Defendant argues that the district court erred in admitting evidence of his prior convictions for the purpose of impeachment because the district court failed to exercise its discretion by engaging in the balancing test required by Rule 11-609 NMRA. Defendant also asserts that even if it had, the prejudicial effect of his prior battery upon a peace officer conviction requires reversal. The State responds that the district court properly weighed the probative value of Defendant's prior conviction against its possible prejudicial effect and that the evidence was admissible under Rule 11-609 or Rule 11-404(B) NMRA. We hold that the district court properly admitted evidence of Defendant's prior conviction.

**{10}** We review the admission of a defendant's prior conviction for an abuse of discretion. *State v. Lucero*, 1982-NMCA-102, ¶ 10, 98 N.M. 311, 648 P.2d 350. "Unless this Court concludes that the district court's ruling was clearly untenable or not justified by reason, we will not hold that the district court abused its discretion." *State v. Lozoya*, 2017-NMCA-052, ¶ 28, 399 P.3d 410.

**{11}** Rule 11-609(A)(1)(b) allows for the impeachment of a witness by evidence of a criminal conviction and provides in relevant part that evidence of a prior criminal conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]" Thus, when a defendant chooses to act as a witness and testify on his own behalf, his or her character for truthfulness is subject to impeachment by evidence of his or her prior convictions, so long as the evidence's probative value outweighed its prejudicial effect. *Lozoya*, 2017-NMCA-052, ¶ 31.

**{12}** Here, Defendant chose to act as a witness and testify on his own behalf, during which he denied intentionally head-butting or kicking Officer Ford. In doing so, his testimony directly contradicted the testimony of Officers Ford and Soriano. Having placed his credibility at issue, like any other witness, he was subject to impeachment under Rule 11-609 by his prior felony convictions as long as the probative value of the convictions outweighs their prejudicial effect. *Id.* In this regard, Defendant contends that the district court did not exercise its discretion when it ruled on the State's motion. Defendant specifically contends that the district court's ruling "appears to have been

premised on a misunderstanding of the law that, by taking the stand to testify, [Defendant] necessarily opened the door to the introduction of the specific offenses of which he had . . . been convicted" despite the fact that Defendant's "prior convictions were of very limited probative value and were extremely prejudicial[.]"

**{13}**     While Defendant's argument presents us with one view of the reconstructed transcript, another reasonable interpretation of the transcript is that, after hearing the officers testify that Defendant hit and kicked Officer Ford and Defendant deny intentionally hitting or kicking Officer Ford, and viewing the recordings of the officers encounter with Defendant, the district court concluded that the evidence was more probative than prejudicial, and admitted the evidence because Defendant placed his credibility at issue. Although the district court did not articulate that it weighed the probative value of the evidence against possible prejudice in exercising its discretion, under the facts of this case and in the absence of evidence indicating that the district court did not weigh the evidence and exercise its discretion, we adopt the latter interpretation. *See State v. Trejo*, 1991-NMCA-143, ¶¶ 6, 7, 113 N.M. 342, 825 P.2d 1252 (drawing a distinction between "failure to exercise discretion and failure to articulate the exercise of discretion on the record[,]" and recognizing that "where it is evident that there existed reasons for and against the ruling, we may indulge in the usual appellate presumptions to affirm the trial court"); *State v. Rojo*, 1999-NMSC-001, 126 N.M. 438, 971 P.2d 829 (stating "[w]here there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the trial court's judgment" (alteration, internal quotation marks, and citation omitted)). Accordingly, we conclude that the district court did exercise its discretion when deciding whether to admit evidence of Defendant's prior convictions.

**{14}**     Having determined that the district court exercised its discretion, we now evaluate whether it abused its discretion in admitting evidence of Defendant's prior convictions. In deciding whether to admit evidence of a defendant's prior conviction under Rule 11-609, the district court should consider:

> (1) the nature of the crime in relation to its impeachment value as well as its inflammatory impact; (2) the date of the prior conviction and witness's subsequent history; (3) similarities, and the effect thereof, between the past crime and the crime charged; (4) a correlation of standards expressed in Rule [11-]609([A]) with the policies reflected in Rule [11-]404 . . .; (5) the importance of the defendant's testimony[;] and (6) the centrality of the credibility issue.

*Lucero*, 1982-NMCA-102, ¶ 12. However, these factors "are not to be considered mechanically or in isolation." *Trejo*, 1991-NMCA-143, ¶ 9. Rather, "[t]he court should make every effort to strike a reasonable balance between the interests of the public and those of the defendant in disposing of the charges in accordance with the truth, keeping in mind the high degree of prejudice often associated with introduction of a prior conviction at trial." *Id.*

**{15}** In this case, the State sought admission of Defendant's conviction for battery upon a peace officer. Even though Defendant's prior battery upon a peace officer conviction was not a crime of dishonesty, "[Rule] 11-609(A)[] permits the introduction of a prior felony conviction to attack credibility regardless of whether dishonesty was an element of that felony." *State v. Hall*, 1987-NMCA-145, ¶ 24, 107 N.M. 17, 751 P.2d 701. Therefore, the prior conviction was probative of Defendant's credibility. *See Lucero*, 1982-NMCA-102, ¶ 10 (holding that our "Supreme Court's adoption of Rule [11-]609 [was] tantamount to a determination that any felony punishable by imprisonment in excess of one year bears on credibility").

**{16}** With regard to the date of Defendant's prior conviction, we acknowledge "[t]he remoteness or nearness of the acts giving rise to the prior conviction is an important factor to be considered by the court." *Trejo*, 1991-NMCA-143 ¶ 11. And "[a]n act occurring several years before the trial and followed by years of lawful conduct is less probative because of its remoteness." *Id.* Here, the acts giving rise to Defendant's prior conviction for battery upon a peace officer occurred on June 23, 2016, approximately two years and five months before trial in this case. Given the age of Defendant's prior conviction, it fell within the district court's discretion to afford it some probative value.[2] *See State v. Conn*, 1992-NMCA-052, ¶ 10, 115 N.M. 101, 847 P.2d 746 (recognizing that Rule 11-609(A)(1) permits admission of prior convictions "that are less than ten years old may be admitted if the trial court determines that the probative value of the evidence outweighs its prejudicial effect").

**{17}** We next consider Defendant's prior conviction and the charge for which he was on trial. They were identical, i.e. battery upon a peace officer contrary to Section 30-22-24. Because introduction of evidence of a similar prior conviction will have at least some prejudicial impact against a defendant, "convictions for the same crime should be admitted sparingly." *Trejo*, 1991-NMCA-143, ¶ 12. Although Defendant's prior conviction is identical to the charges for which he was on trial and therefore had some prejudicial impact against Defendant, the prejudice arising from this similarity is not alone dispositive of the question of admissibility. *See id.* (recognizing that "we have held that evidence of a prior offense is not prohibited for impeachment purposes solely on the basis of its similarity with the presently charged crime").

**{18}** We also consider the correlation of standards expressed in Rule 11-609 with the policies reflected in Rule 11-404. *See State v. Martinez*, 2021-NMSC-002, ¶ 94, 478 P.3d 880 (considering Rule 11-404(B) NMRA and stating "if a fact is wholly undisputed, the only additional probative value extrinsic-act evidence would have on that issue would be to show a person's propensity and accordingly must be excluded" (internal quotation marks and citation omitted)). The State argues that Defendant testified that if he struck anyone it was inadvertent and therefore his prior conviction for battery upon a peace officer was relevant to show an "absence of mistake or lack of accident" under

---

2In *Trejo*, this Court stated that "[a]n act occurring several years before the trial and followed by years of lawful conduct is less probative because of its remoteness[,]" but did not draw a bright line identifying where on the ten-year limitation for use, the age of the conviction becomes less probative because of its remoteness. 1991-NMCA-143, ¶ 11.

Rule 11-404(B)(2). Thus, the stated purpose for which the State sought admission of Defendant's prior conviction under Rule 11-609 appears to correlate with the policies reflected in Rule 11-404. To the extent this factor is considered we give it little weight in favor of admission. *Trejo*, 1991-NMCA-143, ¶ 13.

**{19}** Finally, as for the importance of Defendant's testimony and the centrality of credibility, as Defendant points out his testimony was the only evidence provided to show that his contact with Officer Ford was unintentional. Thus, Defendant's testimony was no doubt important to his case. However, despite objecting to the use of the prior convictions generally, Defendant failed to specifically object or request that the district court preclude the State from revealing the identity of his prior convictions. *See id.* ¶ 14. And it is unclear to us, and would not have been clear to the district court, that Defendant's objection that he "didn't open the door" to the use of his prior convictions for impeachment was not only an objection to the use of his prior convictions in general, but also a specific objection to revealing the identity of the prior convictions to the jury. In view of the conflicting evidence—including testimony from both Officer Soriano and Officer Ford that Defendant kicked and hit Officer Ford, as well as Defendant's denial to intentionally battering Office Ford—the importance of Defendant's credibility was critical to the jury's determination of the issues presented. *See id.* ¶¶ 14-15 (noting that where the trial "boil[s] down to a swearing match . . . it bec[omes]more, not less, compelling to explore all avenues which would shed light on which of the two witnesses was to be believed" (internal quotation marks and citation omitted)).

**{20}** Considering these factors together, we are not convinced that the prejudice created by admission of Defendant's prior conviction outweighed its probative value. Consequently we cannot say "the district court's ruling was clearly untenable or not justified by reason[.]" *Lozoya*, 2017-NMCA-052, ¶ 28. "While the trial court could have properly exercised its discretion in favor of excluding the prior conviction under the facts of this case, we decline to substitute our judgment for that of the trial court." *Trejo*, 1991-NMCA-143, ¶ 16; *see also Hall*, 1987-NMCA-145, ¶ 28 (taking notice "where evidence is admissible under any particular theory, the decision to admit it will generally be upheld). Therefore, we conclude that the district court did not abuse its discretion in admitting evidence of Defendant's prior conviction.

## II.    The Prosecutor's Rebuttal Argument

**{21}** Defendant next argues that the prosecutor committed misconduct by referring to the criminal complaint[3]—which was not admitted into evidence—during his rebuttal argument. Defendant acknowledges that his arguments are unpreserved but asks that we review this issue for fundamental error. The State does not argue that the prosecutor's reference to the complaint was proper and instead argues that the prosecutor's reference to the complaint did not constitute fundamental error. Although we agree that reading from an unadmitted exhibit during rebuttal argument is improper,

---

3The criminal complaint at issue refers to the magistrate court criminal complaint written by Officer Ford and is also referred to as Officer Ford's report both at the trial below and in the parties' briefing to this Court. For clarity, we use only the term "complaint" throughout our discussion.

we nonetheless conclude that the prosecutor's conduct did not result in fundamental error. We explain.

**{22}** "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial, and we will reverse a conviction despite defense counsel's failure to object." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. Under our fundamental error review, we will only reverse the jury's verdict "(1) when guilt is so doubtful as to shock the conscience; or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* In determining whether error is fundamental, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted). Reversal of the trial court's verdict is warranted "[o]nly in the most exceptional circumstances[.]" *Id.* ¶ 25.

**{23}** In New Mexico, we afford trial judges broad discretion in managing closing argument because they "are in the best position to assess the impact of any questionable comment[.]" *Id.* The prosecution similarly has wide latitude during closing arguments. *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. A prosecutor's remarks, however, must be based on the evidence or made in response to the defendant's arguments. *Id.*

**{24}** When analyzing prosecutorial statements we begin by considering three factors. First, we consider whether the statement invades some distinct constitutional protection such as a defendant's post-*Miranda* silence or a defendant's exercise of his Fourth Amendment rights in refusing to consent to a warrantless search. *Sosa*, 2009-NMSC-056, ¶¶ 26-28. Second, we evaluate whether the statement made "is isolated and brief, or repeated and pervasive[.]" *Id.* ¶ 26. Generally, "an isolated comment made during closing argument is not sufficient to warrant reversal." *State v. Fry*, 2006-NMSC-001, ¶ 51, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). Third, we consider "whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26. Courts are unlikely to find error "where the defense has opened the door to the prosecutor's comments by its own argument or reference to facts not in evidence." *Id.* ¶ 33 (internal quotation marks and citation omitted).

**{25}** In applying these factors, "the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.* ¶ 26. However while these factors are useful guides, context is paramount. *Id.* ¶ 34. "Where evidence of guilt is overwhelming, or an improper statement is corrected by counsel or the court, reversible error is less likely. If a case turns on a crucial fact that is improperly manipulated in closing, or if counsel persists when admonished to desist, the probability of error is greater." *Id.* Ultimately, our analysis focuses on determining whether "the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.*

**{26}**    Before addressing the prosecutions comments, we first set out the following remarks made during defense counsel's closing argument:

> [Defendant] did not kick [Officer Ford] in the stomach. If you are kicked in the stomach that's the first thing you are going to write in the [complaint], that I have just been kicked in the stomach, and it is going to hurt. [Officer Ford] does not state that he was kicked in the stomach until today. [Defendant] did not kick [Officer Ford] in the stomach.

In rebuttal, the prosecution made the following comments:

> You heard Officer Ford say that he was kicked, well guess what, right here page three of the . . . complaint, he wrote that he was kicked. He didn't say that he was kicked in the stomach but he reported in the . . . complaint that he was kicked, not like the defense wants you to believe that he didn't even report it. Officer Ford was battered in the line of duty by this Defendant.

Having set out the comments relevant to our analysis, we now consider the *Sosa* factors to evaluate whether the State's reference to the complaint amounts to fundamental error.

**{27}**    With regard to whether the prosecution's comments invaded some distinct constitutional protection, Defendant argues that reference to the complaint and its contents introduced new evidence in violation of Defendant's constitutional right to confrontation. Specifically, Defendant asserts that had the complaint been introduced during Officer Ford's testimony, Defendant would have had an opportunity to confront the witness about its contents. While it is true that the complaint itself was not introduced into evidence, the content at issue was discussed during Officer Ford's testimony. During the State's questioning, Officer Ford testified that, while he struggled to place Defendant in the patrol car, Defendant "mule kicke[d]" him in the stomach at least once. And during cross-examination, defense counsel confronted Officer Ford about the contents of his complaint. Defense counsel asked Officer Ford if he was aware that he had not stated that Defendant kicked him in the stomach to which Officer Ford replied, "I believe what I said is that I was kicked by [Defendant]." Defense counsel pressed the matter further, clarifying, "so you didn't state in your [complaint] which you wrote back then that you were kicked in the stomach . . . however months later you are telling us that you were kicked in the stomach." Defense counsel's questions to Officer Ford plainly challenge his complaint and its contents.

**{28}**    Thus, the prosecutor did not introduce new facts when he read from page three of the unadmitted complaint because Officer Ford already testified that he wrote in his complaint that he was kicked. However, the prosecutor's reading from the actual complaint presented the jury with new evidence—what was actually written in the complaint. To the extent Defendant claims that the prosecutor's introduction of this new

evidence violated his right to confrontation, we disagree. Defense counsel confronted the officer about what was and what was not in his complaint during cross-examination.

**{29}**     Next, we observe that the comments at issue were isolated and brief. The prosecution referenced the complaint only in its rebuttal argument and its entire discussion of the complaint lasted approximately thirty seconds. Further, while Defendant asserts that defense counsel "referred only to trial testimony about the . . . [c]omplaint, not the actual . . . [c]omplaint itself," we disagree. As set out above, during closing arguments defense counsel argued, "If you are kicked in the stomach that's the first thing you are going to write in the [complaint]" and went on to argue that Officer Ford did not state that he was kicked in the stomach until trial. Defense counsel's reference to the complaint and arguments directly challenging Officer Ford's reporting of events prior to trial indisputably implicates the complaint and its contents. Asserting that Officer Ford's testimony differed from his complaint invited a response from the prosecution. However, quoting the actual complaint itself instead of relying on the evidence before the jury was improper. Despite their impropriety, the prosecutor's remarks were clearly in direct response to defense counsel's arguments. Because the defense implicitly conceded the fact that the officer reported the kick in the complaint but not its location, the prosecutor's statement did not contradict and indeed explicitly acknowledged that the officer did not write in the complaint that he was kicked in the stomach.

**{30}**     Defendant also argues that the prosecutor's comments amount to improper prosecutorial vouching and the comments were more prejudicial because they were the last thing the jury heard before deliberations. We disagree. As set out above, Officer Ford had already described the confrontation during his testimony and acknowledged on cross-examination that although he did not report that he was specifically kicked in the stomach, he did report that Defendant kicked him. Reading from the complaint corroborated the officer's testimony. However, under the facts of this case we do not believe the prosecutor's brief reference to the complaint affected the jury's view of the evidence presented. Consequently, we conclude that the prosecutor's comments during rebuttal, while improper did not compromise Defendant's right to a fair trial and therefore do not constitute fundamental error.

### III.     Cumulative Error

**{31}**     Defendant next argues that, considered together, errors in the district court's admission of his prior conviction and the prosecutor's comments during rebuttal argument had a cumulative prejudicial impact that deprived Defendant of a fair trial. We disagree.

**{32}**     "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Miera*, 2018-NMCA-020, ¶ 45, 413 P.3d 491 (internal quotation marks and citation omitted). However, the doctrine should be strictly

applied and does not apply where "the record as a whole demonstrates that the defendant received a fair trial." *Id.* (internal quotation marks and citation omitted).

**{33}**   As explained above, in light of the other evidence presented at trial, admission of Defendant's prior convictions was not an abuse of discretion. Additionally, the prosecutor's reference to the criminal complaint did not compromise Defendant's right to a fair trial and therefore did not amount fundamental error. Thus, we reject Defendant's cumulative error claim.

## IV.    Sufficiency of the Evidence

**{34}**   Finally, Defendant argues that evidence presented at trial was legally insufficient to support his conviction for careless driving. Specifically, Defendant asserts that the evidence presented did not constitute careless driving under Section 66-8-114 but instead racing on highways under NMSA 1978, Section 66-8-115 (1978) and that as separate and distinct crimes, evidence supporting conviction for racing on highways cannot legally suffice to prove careless driving. The State responds that our standard of review for sufficiency challenges requires only that we determine whether evidence supports the charged crime, not whether the evidence supports conviction under a different statute.

**{35}**   While the State is ostensibly correct, Defendant's sufficiency argument principally challenges whether the evidence presented constitutes careless driving. Defendant asserts the only evidence supporting his careless driving conviction was video footage of his vehicle peeling out at a stoplight. He contends this evidence cannot support a conviction of careless driving where the Legislature has otherwise prohibited the conduct under the racing on highways statute. Defendant asserts that if the conduct at issue can be charged as careless driving, the racing on highways statute is superfluous. Accordingly, because Defendant's argument presents a question of statutory interpretation, we first conduct a de novo review of the statutes at issue. *State v. Gonzales*, 2019-NMCA-036, ¶ 7, 444 P.3d 1064, *cert. denied*, 2019-NMCERT-____ (No. S-1-SC-37707, July 1, 2019). Then, "[a]fter reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Quintin C.*, 2019-NMCA-069, ¶ 6, 451 P.3d 901 (internal quotation marks and citation omitted).

**{36}**   When interpreting a statute "our primary objective is to give effect to the Legislature's intent." *Gonzales*, 2019-NMCA-036, ¶ 7 (internal quotation marks and citation omitted). "In discerning legislative intent, we look first to the language used and the plain meaning of that language. When a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.* (alteration, internal quotation marks, and citation omitted). "In addition to looking at the statute's plain language, we will consider its history and background and how the specific statute fits within the broader statutory scheme." *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. We must also "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole."

*Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. We begin by setting out the statutes at issue.

**{37}** Section 66-8-114(B) provides: "Any person who operates a vehicle in a careless, inattentive or imprudent manner, without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances is guilty" of careless driving. A conviction for careless driving requires a finding of general intent. *State v. Percival*, 2017-NMCA-042, ¶ 16, 394 P.3d 979. This Court previously interpreted Section 66-8-114 to prohibit "driving while not paying enough attention under the existing circumstances." *State v. Baldonado*, 1978-NMCA-111, ¶ 4, 92 N.M. 272, 587 P.2d 50. Although the statute does not set out specific conduct constituting careless driving, this Court acknowledged "[t]he fact that one cannot predict what the circumstances might be does not make the statute vague." *Id.* Thus, what conduct amounts to careless driving might vary depending on the circumstances.

**{38}** In contrast, Section 66-8-115(A) includes more specific prohibitions and provides that

> "no person shall drive a vehicle on a highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration or for the purpose of making a speed record, whether or not the speed is in excess of the maximum speed prescribed by law, and no person shall in any manner participate in any such race, drag race, competition, contest, test or exhibition."

This Court interpreted Section 66-8-115's prohibition against exhibitions of speed in *Gonzales*. In *Gonzales*, the defendant sought a definition of the term "exhibition" to require a "display of driving skill to an audience." 2019-NMCA-036, ¶ 11. This Court rejected the defendant's narrow interpretation holding that "the plain meaning of the term 'exhibition' does not require a display of a particular skill, such as driving prowess." *Id.* However, in reaching this holding, this Court emphasized that we have not "attempted to draw the boundaries of criminality of exhibition of speed or acceleration," nor did we intend to suggest "that every tire screech, squeal, or instance of peeling out will be sufficient to impose criminal liability under Section 66-8-115." *Gonzales*, 2019-NMCA-036, ¶ 12 (internal quotation marks omitted). After interpreting Section 66-8-115, this Court went on to conclude that evidence showing that the defendant revved his engine and peeled out at a stoplight after "the guy beside him had pissed him off" was sufficient to prove that the defendant "intentionally engaged in an outward display of speed or acceleration to another." *Id.* ¶ 13 (internal quotation marks omitted).

**{39}** Viewing these statutes together, both appear to apply to Defendant's conduct in this case, i.e. peeling out at the stop light. However, case law interpreting these statutes reveals that the intent required for a conviction for careless driving is distinct from that required for racing on highways. That is, while careless driving requires only general intent, *Percival*, 2017-NMCA-042, ¶ 16, a conviction for racing on highways requires

evidence that a defendant specifically intended to engage in an exhibition of speed to another. *See Gonzales*, 2019-NMCA-036, ¶ 13. Indeed, this Court's acknowledgment that not every tire screech, squeal, or instance of peeling out amounts to an exhibition of speed demonstrates this distinction. *Id.* ¶ 12. Thus, where a defendant carelessly peels out without intending to make an exhibition of speed, the racing on highways statute is inapplicable but charges under the careless driving statute might be warranted. Therefore, we conclude that although a conviction under either the racing on highways statute or the careless driving statute might be supported by evidence showing a defendant peeled out, because racing on highways requires specific intent and careless driving does not, the latter does not subsume the former. We now determine whether substantial evidence supports Defendant's conviction for careless driving.

**{40}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted). "[J]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gonzales*, 2019-NMCA-036, ¶ 12 (alteration, internal quotation marks, and citation omitted). "In making this determination, we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

**{41}** To convict Defendant of careless driving, the jury was instructed in relevant part, that it had to find beyond a reasonable doubt that "[D]efendant operated the motor vehicle in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather, road conditions and all other attendant circumstances."

**{42}** At trial, Officer Soriano testified that he witnessed Defendant's vehicle peel out from the intersection at which it was stopped and accelerated at a high rate of speed. Officer Soriano witnessed Defendant's tires squeal and smoke as he sped away. Officer Soriano further testified that when a vehicle peels out it breaks traction with the road and can skid in any direction. In addition to Officer Soriano's testimony, video from his patrol vehicle's dashboard camera showing Defendant's vehicle peel out from the intersection was admitted into evidence. Viewing this evidence in the light most favorable to the verdict, there is substantial evidence that Defendant operated his vehicle in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather, road conditions and all other attendant circumstances when he peeled out at the intersection. Accordingly, we conclude that a rational jury could have found beyond a reasonable doubt the essential facts required for conviction under Section 66-8-114 for "careless driving."

**CONCLUSION**

**{43}** For the foregoing reasons, we affirm Defendant's convictions for battery upon a peace officer and careless driving.

**{44}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**